BROWN, LLC
Nicholas Conlon (*PHV forthcoming*)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
nicholasconlon@jtblawgroup.com
Counsel for Plaintiff
(Additional counsel appear on signature page)

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| HEIDI LOTHRINGER, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>INTOUCHCX US INC.,<br><br>Defendant. | Case No.:<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND |

Plaintiff HEIDI LOTHRINGER ("Plaintiff" or "Lothringer"), individually and on behalf of all others similarly situated, by and through her attorneys, BROWN, LLC, alleges upon personal knowledge as to herself and upon information and belief as to all other matters as follows:

## INTRODUCTION

1. This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. to recover unpaid overtime compensation and liquidated damages arising from Defendant's failure to pay non-exempt call center agents for all hours worked, including required pre-shift login time, post-shift shutdown time, break-period re-login work, and employer-controlled waiting time during technical outages.

2. This action is also brought pursuant to Nevada wage-and-hour laws, including Nev. Rev. Stat. §§ 608.016, 608.018, 608.020, 608.030, 608.040, and 608.050, and Nevada's Minimum Wage Amendment, Nev. Const. Art. 15 § 16, to

recover unpaid minimum, straight-time, and overtime wages for all hours worked, as well as statutory waiting time penalties for Defendant's failure to timely pay all wages due upon separation.

3. Defendant operates a nationwide customer service outsourcing business and employs call center agents who handle inbound calls for corporate clients.

4. Plaintiff and similarly situated call center agents were required to perform substantial off-the-clock work before, during, and after their scheduled shifts, including mandatory system login procedures, break-time re-login activities, post-shift shutdown procedures, and employer-controlled waiting time during technical outages.

5. Defendant failed to compensate Plaintiff and other non-exempt call center agents for this compensable time, including time worked in excess of forty (40) hours in a workweek.

6. Defendant further failed to pay all earned wages upon separation of employment, entitling Plaintiff and other call center agents to waiting time penalties under Nevada law.

7. Plaintiff brings her FLSA claims individually and on a collective basis pursuant to 29 U.S.C. § 216(b) on behalf of herself and all current and former hourly-paid, non-exempt call center agents employed by Defendant in the United States, Puerto Rico, or any other place covered by the FLSA within the three (3) years preceding the filing of this action (the "FLSA Collective").

8. Plaintiff also brings her Nevada unpaid wage claims individually and on a class basis pursuant to Fed. R. Civ. P. 23 on behalf of all current and former hourly-paid, non-exempt call center agents who worked for Defendant in Nevada at any time within the four (4) years preceding the filing of this action and the date of judgment (the "Nevada Wage Class").

9. Plaintiff further brings her Nevada waiting time penalty claim individually and on a class basis pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Nevada Wage Class whose employment with Defendant ended within the two (2) years preceding the filing of this action and the date of judgment and who were not paid all wages due at the time of separation (the "Nevada Waiting Time Subclass").

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the FLSA.

11. This Court has supplemental jurisdiction over Plaintiff's Nevada state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claim.

12. Defendant is subject to personal jurisdiction in Arizona because it maintains its principal office at 1300 S Country Club Drive, Suite 1302, Mesa, Arizona 85210, and transacts substantial business within this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred within this District, including Defendant's centralized payroll, timekeeping, and operational control functions.

## THE PARTIES

14. Plaintiff HEIDI LOTHRINGER is a natural person and resident of Las Vegas, Nevada.

15. Plaintiff was employed by Defendant as a non-exempt, hourly call center agent.

16. Plaintiff worked remotely from her home in Las Vegas, Nevada.

17. Plaintiff was hired on or about November 23, 2023, began active employment on or about January 1, 2024, and was terminated in or about September 2024.

18. At all relevant times, Plaintiff was paid on an hourly basis, initially at approximately $15.00 per hour and later at approximately $17.00 per hour.

19. Pursuant to 29 U.S.C. § 216(b), Plaintiff has filed a written consent to join this action.

20. Defendant INTOUCHCX US INC. is a corporation formed under the laws of Colorado, with its principal office located at 1300 S Country Club Drive, Suite 1302, Mesa, Arizona 85210.

## FACTUAL ALLEGATIONS[1]

21. Defendant operates a nationwide customer experience and customer service outsourcing business, providing call center and customer support services to corporate clients throughout the United States.

22. Defendant employs hundreds of call center agents across multiple states, including Nevada, to handle inbound and outbound customer communications for its clients.

23. Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1).

24. Defendant has employees engaged in commerce or in the production of goods for commerce.

25. Defendant has an annual gross volume of sales made or business done of not less than $500,000.

[1] Unless otherwise specifically stated, the allegations in this Complaint refer to the period of four (4) years preceding the commencement of this action through the date of judgment.

26. Plaintiff and members of the FLSA Collective are or were individually engaged in commerce within the meaning of 29 U.S.C. § 207(a), including by regularly handling interstate communications, utilizing internet-based and cloud-based systems that transmit data across state lines, and providing customer service to customers located throughout the United States.

27. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA.

28. Plaintiff and members of the FLSA Collective are or were "employees" within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

29. Defendant suffers and permits call center agents to work and thus employs them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

30. Call center agents handle inbound and outbound customer calls on behalf of Defendant's clients and provide customer service support regarding account issues, billing inquiries, service changes, and contract enrollments.

31. Call center agents utilize multiple computer-based systems simultaneously while communicating with customers and are required to remain continuously available to receive calls during their scheduled shifts, except during designated break periods.

32. Defendant suffers and permits call center agents to work schedules that include eight (8) or more hours of scheduled work time in a day and forty (40) or more hours of scheduled work time in a week.

33. For example, Plaintiff was scheduled to work 10:30 a.m. to 8:00 p.m. on Saturday, Sunday, Monday, and Tuesday, with a thirty (30) minute unpaid meal period each day, and 3:00 p.m. to 7:00 p.m. on Wednesday. Exclusive of meal periods, this schedule totaled forty (40) hours per week. Accordingly, any additional pre-shift, post-shift, or break-related work time caused Plaintiff to work in excess of forty (40) hours in a workweek.

34. For example, during the pay period beginning February 18, 2024 and ending March 2, 2024, Plaintiff worked 80.48 total hours and was paid for 8.35 hours of overtime, reflecting that she worked more than forty (40) hours in at least one workweek during that period. During that same timeframe, Plaintiff's scheduled shifts consisted of four nine (9) hour workdays per week (exclusive of meal periods), thereby exceeding eight (8) hours in a day.

35. In order to perform their job duties, call center agents are required to complete a multi-step "Set-Up Process" before clocking in for their scheduled shifts. This process includes logging into Windows on employer-issued equipment, authenticating through Defendant's VPN, completing multi-factor authentication through Okta and/or Citrix, and launching required work applications, including but not limited to Five9, IBM Sterling (OMS), PestPac, internal communication platforms, and work email systems.

36. Defendant requires call center agents to be fully logged into all required systems and placed in "Ready" status in the Five9 call-handling platform at the precise start of their scheduled shift time. In order to meet this requirement, call center agents begin the Set-Up Process before their scheduled shift start time to ensure that all systems are operational and that they are able to immediately begin handling customer calls.

37. Defendant does not permit call center agents to clock in until after completing the Set-Up Process. As a result, call center agents perform these required login and system initialization activities off-the-clock and without compensation.

38. The Set-Up Process is integral and indispensable to call center agents' principal job duties. Without completing these login, authentication, and system-launch procedures, call center agents cannot access customer accounts, receive inbound calls, review work instructions, or perform any of the core functions of their positions.

39. The time spent performing the Set-Up Process is not *de minimis*. Call center agents perform these activities at the start of virtually every shift, and the cumulative unpaid time regularly amounts to substantial uncompensated work each workweek.

40. Defendant knows or has reason to know that call center agents perform this work before clocking in. Defendant controls the login architecture, monitors system access, tracks "Ready" status in Five9, and disciplines call center agents who are not fully logged in and available to receive calls at the exact start of their scheduled shifts. Despite this knowledge and control, Defendant fails to compensate call center agents for this time.

41. During unpaid meal periods and rest breaks, call center agents are required to log out of multiple work systems, including Five9 and other required applications, before beginning their break time. At the conclusion of the break period, call center agents are required to repeat the same multi-step login and authentication procedures described above in order to return to "Ready" status and resume handling customer calls.

42. In practice, call center agents must begin logging back into systems several minutes before their scheduled break or meal period ends in order to ensure that all applications are fully loaded and operational by the time the break officially concludes. This process includes reconnecting to the VPN, completing multi-factor authentication, reopening required applications, and restoring call-handling functionality in Five9.

43. As a result of these requirements, call center agents do not receive a full, uninterrupted break period. A portion of each unpaid meal period and rest break is routinely spent performing required login and system initialization activities that are necessary to resume call-handling duties at the exact moment the break period expires.

44. Defendant requires call center agents to be in “Ready” status at the precise end of each break and disciplines call center agents who are not timely available to receive calls. Accordingly, call center agents perform login and preparatory work during what is designated as unpaid break time in order to comply with Defendant’s policies and avoid discipline.

45. These re-login and system initialization activities are integral and indispensable to call center agents’ principal duties and are part of the same continuous workday that begins with the first principal activity performed before the scheduled shift start. The time spent performing these activities during unpaid meal periods and rest breaks is not *de minimis* and regularly results in additional uncompensated work each workweek.

46. Defendant knows or has reason to know that call center agents perform these activities during unpaid break periods. Defendant designs and controls the login architecture, monitors system status, tracks call availability metrics, and enforces attendance and readiness policies that require call center agents to complete these activities before the expiration of each break.

47. At the conclusion of their scheduled shifts, call center agents are required to perform additional work-related tasks before fully disconnecting from Defendant’s systems. These tasks include closing work applications, logging out of Five9 and other required platforms, disconnecting from the VPN, and shutting down employer-issued computer equipment.

48. Defendant instructs call center agents not to exceed their scheduled shift end time and disciplines call center agents who remain clocked in beyond the precise end of their shift. As a result, call center agents clock out at or near their scheduled end time and then complete required shutdown procedures off-the-clock.

49. The post-shift shutdown process takes several minutes to complete and is necessary to properly secure Defendant’s systems, close customer sessions, and

comply with Defendant's technology and security policies. Call center agents cannot simply walk away from their workstations at the scheduled end of their shifts without first performing these required logout and shutdown procedures.

50. These post-shift activities are integral and indispensable to call center agents' principal job duties and constitute the last principal activity of the workday. The time spent performing shutdown procedures is not *de minimis* and regularly results in additional uncompensated work each workweek.

51. Defendant knows or has reason to know that call center agents perform these shutdown procedures after clocking out. Defendant controls system access, monitors login and logout data, enforces strict shift-end compliance policies, and requires full system disconnection at the end of each shift. Despite this knowledge and control, Defendant fails to compensate call center agents for this time.

52. Call center agents regularly experience system outages, application failures, password lockouts, connectivity interruptions, and other technical malfunctions that prevent them from accessing required work platforms. When such issues occur, call center agents are required to remain at their workstations, monitor their systems, communicate with supervisors or IT personnel, and attempt to reconnect to Defendant's systems.

53. During these technical outages, call center agents are not permitted to leave their desks or use their time for personal purposes. Defendant requires call center agents to remain available, responsive, and prepared to resume handling calls immediately once systems are restored.

54. Call center agents frequently spend extended periods of time waiting for IT assistance, system resets, or restored connectivity. During this time, they remain subject to Defendant's control and direction and are engaged to wait for work to resume.

55. Defendant maintains coding options within its timekeeping system that distinguish between different types of technical issues and, upon information and belief, tracks system login attempts and downtime through internal monitoring systems. Despite knowing that call center agents remain at their desks and under its control during these outages, Defendant fails to compensate call center agents for all such time or pays only partial compensation for certain categories of technical downtime.

56. This employer-controlled waiting time is integral to call center agents' principal activities and is part of the continuous workday. The time spent waiting for systems to function is not *de minimis* and regularly contributes to uncompensated hours worked in excess of forty (40) in a workweek.

57. Defendant knows or has reason to know that call center agents perform this waiting and reconnection work during outages. Defendant controls the technological infrastructure, monitors login and availability metrics, enforces attendance policies during outages, and disciplines call center agents based on timekeeping entries. Nevertheless, Defendant fails to compensate call center agents for all hours worked during such periods.

58. When the uncompensated pre-shift Set-Up Process time, break re-login work, post-shift shutdown activities, and employer-controlled technical downtime are added to these scheduled hours, call center agents regularly work more than forty (40) hours in a workweek. Despite this, Defendant fails to include this off-the-clock time in call center agents' total hours worked and fails to pay overtime compensation at one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a workweek.

59. Defendant's violations of the Fair Labor Standards Act are willful. Defendant operates a nationwide call center enterprise, designs and controls the login architecture and timekeeping systems at issue, monitors system access and

"Ready" status data, and knows or has reason to know that call center agents perform required work before clocking in, during unpaid breaks, after clocking out, and while waiting during technical outages.

60. Defendant has been repeatedly sued in prior wage-and-hour lawsuits alleging similar failures to compensate call center agents for off-the-clock login and related work. Despite this notice and litigation history, Defendant continues to maintain policies and practices that result in unpaid compensable time, demonstrating reckless disregard for, or deliberate indifference to, its obligations under the FLSA.

61. At the time of their separation of their employment with Defendant, Defendant does not pay call center agents for the uncompensated pre-shift Set-Up Process time, break re-login work, post-shift shutdown activities, and employer-controlled technical downtime described above. These earned but unpaid wages remain outstanding at the time of separation.

62. As a result of Defendant's failure to timely pay all wages due at separation, call center agents who separate from employment suffer continued nonpayment of earned wages, triggering statutory waiting time penalties under Nevada law.

## COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective previously defined herein.

64. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the putative members of the FLSA Collective are "similarly situated" to Plaintiff within the meaning of 29 U.S.C. § 216(b).

65. Plaintiff and the FLSA Collective members were employed by Defendant in the same or similar positions as hourly-paid, non-exempt call center

agents and were subject to the same or substantially similar compensation policies and practices.

66. Specifically, Plaintiff and the FLSA Collective members were required to complete mandatory pre-shift login and system initialization procedures before clocking in, were required to perform re-login procedures during unpaid break periods, were required to complete post-shift shutdown procedures after clocking out, and were required to remain at their workstations during technical outages without compensation for all such time.

67. The employment relationship between Defendant and the FLSA Collective members is substantially similar and differs only by name, job location, and rate of pay. The central issues in this case—whether Defendant failed to compensate call center agents for required off-the-clock work and whether such time is compensable under the FLSA—do not vary materially among the FLSA Collective members.

68. The FLSA Collective members were subjected to Defendant's common timekeeping systems, login architecture, availability requirements, and readiness policies, which were designed, implemented, and controlled at the corporate level.

69. The number of FLSA Collective members is substantial. The precise number and identities of such individuals are within Defendant's custody and control and can be readily ascertained from Defendant's payroll, personnel, and timekeeping records.

70. Accordingly, notice should be issued to the FLSA Collective pursuant to 29 U.S.C. § 216(b) so that similarly situated individuals may have the opportunity to opt into this action.

## RULE 23 CLASS ACTION ALLEGATIONS

71. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of the Nevada Wage Class and the Nevada Waiting Time Subclass, as previously defined.

72. The members of the Nevada Wage Class and Nevada Waiting Time Subclass are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant has employed hundreds of hourly-paid, non-exempt call center agents in Nevada during the relevant period. The precise number and identities of such individuals are ascertainable from Defendant's payroll, personnel, and timekeeping records.

73. There is a well-defined community of interest among members of the Nevada Wage Class and Nevada Waiting Time Subclass, and common questions of law and fact predominate over any questions affecting only individual members. These common questions include whether time spent performing mandatory pre-shift login and system initialization procedures constitutes compensable work under Nevada law; whether time spent logging out of and back into required systems during unpaid meal periods and rest breaks is compensable; whether time spent performing post-shift shutdown procedures after clocking out constitutes compensable work; whether time spent waiting during employer-controlled technical outages constitutes compensable work; whether Defendant failed to pay Nevada call center agents for all hours worked in violation of NRS 608.016; whether Defendant failed to pay overtime compensation in violation of NRS 608.018; whether Defendant failed to pay minimum wages for each individual hour worked in violation of Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16; whether Defendant failed to timely pay all wages due upon separation in violation of NRS 608.020, 608.030, 608.040, and 608.050; and the proper measure of damages, statutory penalties, interest, and other relief.

74. Plaintiff's claims are typical of the claims of the Nevada Wage Class and Nevada Waiting Time Subclass. Plaintiff and all class members were employed as hourly-paid, non-exempt call center agents in Nevada and were subject to the same or substantially similar policies and practices concerning timekeeping systems, login architecture, readiness requirements, technical downtime protocols, payroll calculations, and shift-end restrictions.

75. Plaintiff and members of the Nevada Wage Class were required to complete mandatory pre-shift login and system initialization procedures before clocking in, to perform re-login procedures during unpaid break periods, to complete shutdown procedures after clocking out, and to remain at their workstations during technical outages without compensation for all such time. These policies and practices were centrally designed and uniformly applied to Nevada call center agents.

76. The employment relationships between Defendant and members of the Nevada Wage Class and Nevada Waiting Time Subclass are substantially similar and differ only by name, job location, rate of pay, and client campaign assignment. The central issues—whether Defendant failed to pay for all hours worked and whether Defendant failed to timely pay all wages due upon separation—do not vary materially among class members.

77. Plaintiff will fairly and adequately protect the interests of the Nevada Wage Class and Nevada Waiting Time Subclass. Plaintiff has no interests that are antagonistic to those of the classes and has retained counsel experienced in prosecuting wage-and-hour class and collective actions.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual class members, while meaningful, are relatively modest in comparison to the expense and burden of individual litigation. Absent a class action, many class members would

likely be unable to effectively vindicate their rights. A class proceeding will conserve judicial resources and promote consistent adjudication of common issues.

79. Defendant has acted or refused to act on grounds that apply generally to the Nevada Wage Class and Nevada Waiting Time Subclass by implementing uniform timekeeping systems, login architecture, readiness requirements, payroll practices, and separation procedures that resulted in the failure to pay all wages due for all hours worked and at the time of separation.

80. Accordingly, certification of the Nevada Wage Class and Nevada Waiting Time Subclass pursuant to Rule 23(b)(2) and Rule 23(b)(3) is appropriate.

**COUNT I**

**(Brought Individually and as a Collective Action Under 29 U.S.C. § 216(b))**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207(a)(1)**

**FAILURE TO PAY OVERTIME WAGES**

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. At all relevant times, Defendant was an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1), in that it had employees engaged in commerce or in the production of goods for commerce and had an annual gross volume of sales made or business done of not less than $500,000.

83. Plaintiff and the members of the FLSA Collective were individually engaged in commerce within the meaning of 29 U.S.C. § 207(a)(1).

84. At all relevant times, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA.

85. Plaintiff and the members of the FLSA Collective were "employees" within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

86. Defendant suffered and permitted Plaintiff and the members of the FLSA Collective to work and thus employed them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

87. Defendant suffered and permitted Plaintiff and the members of the FLSA Collective to regularly work over forty (40) hours in a workweek.

88. Defendant required Plaintiff and the members of the FLSA Collective to perform compensable work before clocking in, during unpaid break periods, after clocking out, and while waiting during employer-controlled technical outages, but failed to include this time in their total hours worked.

89. As a result, in workweeks in which Plaintiff and the members of the FLSA Collective worked in excess of forty (40) hours, Defendant failed to pay overtime compensation at one and one-half times their regular rate of pay for all hours worked, in violation of 29 U.S.C. § 207(a)(1).

90. The uncompensated time described herein was integral and indispensable to Plaintiff's and the FLSA Collective's principal activities and was not *de minimis*.

91. Defendant knew or should have known that Plaintiff and the members of the FLSA Collective were performing this work and failed to compensate them for all overtime hours worked.

92. Defendant's violations of the FLSA were willful.

93. As a result of Defendant's unlawful conduct, Plaintiff and the members of the FLSA Collective have suffered damages in an amount to be determined at trial and are entitled to recover unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**(Brought Individually and as a Class Action Under Fed. R. Civ. P. 23)**

**VIOLATION OF NEVADA LAW**

**FAILURE TO PAY OVERTIME WAGES (NRS 608.018)**

94. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the Nevada Wage Class pursuant to Nev. Rev. Stat. §§ 608.018 and 608.140.

96. At all relevant times, Defendant was an "employer," and Plaintiff and members of the Nevada Wage Class were "employees" within the meaning of Nevada law.

97. Nev. Rev. Stat. § 608.018 requires an employer to pay overtime compensation at one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) in a workweek and, where applicable, in excess of eight (8) in a workday.

98. Defendant suffered and permitted Plaintiff and the members of the Nevada Wage Class to regularly work over eight (8) hours in a day and over forty (40) hours in a workweek.

99. Defendant failed to include all compensable hours worked by Plaintiff and members of the Nevada Wage Class in calculating their total weekly hours.

100. As a result, in workweeks in which Plaintiff and members of the Nevada Wage Class worked in excess of forty (40) hours, Defendant failed to pay overtime compensation as required by Nev. Rev. Stat. § 608.018.

101. Defendant failed to include all compensable hours worked by Plaintiff and members of the Nevada Wage Class in calculating their total daily and weekly hours worked.

102. As a result, Defendant failed to pay overtime compensation at one and one-half times the regular rate of pay for hours worked in excess of forty (40) in a workweek and hours worked in excess of eight (8) in a workday.

103. Defendant's violations of Nevada overtime law were willful and intentional.

104. As a result of Defendant's unlawful conduct, Plaintiff and members of the Nevada Wage Class are entitled to recover unpaid overtime wages, prejudgment interest, attorneys' fees, and costs pursuant to Nev. Rev. Stat. § 608.140, the implied private right of action to recover wages recognized in *Neville v. Eighth Judicial Dist. Court*, 406 P.3d 499 (Nev. 2017), and other applicable law.

**COUNT III**

**(Brought Individually and as a Class Action Under Fed. R. Civ. P. 23)**

**VIOLATION OF NEVADA LAW**

**FAILURE TO PAY ALL WAGES DUE**

**(NRS 608.016 AND NEV. CONST. ART. 15, § 16)**

105. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Plaintiff brings this claim individually and on behalf of the Nevada Wage Class pursuant to Nev. Rev. Stat. §§ 608.016 and 608.140, and Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16.

107. At all relevant times, Defendant was an "employer," and Plaintiff and members of the Nevada Wage Class were "employees" within the meaning of Nevada law.

108. Nev. Rev. Stat. § 608.016 requires an employer to pay wages to an employee for each hour the employee works.

109. Nevada's Minimum Wage Amendment guarantees payment of a minimum wage for each individual hour worked. Nev. Const. Art. 15, § 16.

110. Plaintiff and members of the Nevada Wage Class performed compensable work for Defendant, including mandatory pre-shift login and system initialization activities, re-login activities during unpaid meal periods and rest breaks, post-shift shutdown procedures performed after clocking out, and employer-controlled waiting time during technical outages.

111. Defendant failed to include all compensable hours worked by Plaintiff and members of the Nevada Wage Class in calculating their total daily and weekly hours worked.

112. As a result, Defendant failed to pay straight-time wages for all hours worked in violation of Nev. Rev. Stat. § 608.016.

113. By failing to compensate Plaintiff and members of the Nevada Wage Class for all hours worked, Defendant paid no wages for certain hours worked.

114. Payment of no wages for hours worked is less than the minimum wage required for each individual hour worked under Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16.

115. Defendant's violations of NRS 608.016 and Nevada's Minimum Wage Amendment were willful and intentional.

116. As a result of Defendant's unlawful conduct, Plaintiff and members of the Nevada Wage Class are entitled to recover unpaid wages, prejudgment interest, attorneys' fees, and costs pursuant to Nev. Rev. Stat. § 608.140, the implied private right of action to recover wages recognized in *Neville*, and other applicable law.

**COUNT IV**

**(Brought Individually and as a Class Action Under Fed. R. Civ. P. 23)**

**VIOLATION OF NEVADA LAW**

**WAITING TIME PENALTIES**

**(NRS 608.020, 608.030, 608.040, AND 608.050)**

117. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118. Plaintiff brings this claim individually and on behalf of the Nevada Waiting Time Subclass pursuant to Nev. Rev. Stat. §§ 608.020, 608.030, 608.040, 608.050, and 608.140.

119. At all relevant times, Defendant was an “employer,” and Plaintiff and members of the Nevada Waiting Time Subclass were “employees” within the meaning of Nevada law.

120. Nev. Rev. Stat. §§ 608.020 and 608.030 require an employer to timely pay all wages earned and due upon separation of employment.

121. Nev. Rev. Stat. §§ 608.040 and 608.050 provide that if an employer fails to timely pay all wages due at separation, the employee’s wages continue as a penalty from the due date until paid, for up to thirty (30) days.

122. Plaintiff and members of the Nevada Waiting Time Subclass performed compensable work for Defendant for which they were not paid, including pre-shift login work, break-period re-login work, post-shift shutdown work, and employer-controlled waiting time during technical outages.

123. At the time of separation from employment, Defendant failed to pay Plaintiff and members of the Nevada Waiting Time Subclass all wages earned and due.

124. As a result, Defendant failed to timely pay all wages due upon separation in violation of Nev. Rev. Stat. §§ 608.020 and 608.030.

125. Defendant’s failure to timely pay all wages due triggered statutory waiting time penalties pursuant to Nev. Rev. Stat. §§ 608.040 and 608.050.

126. Defendant’s violations of Nevada’s waiting time statutes were willful and intentional.

127. As a result of Defendant's unlawful conduct, Plaintiff and members of the Nevada Waiting Time Subclass are entitled to recover statutory waiting time penalties, prejudgment interest, attorneys' fees, and costs pursuant to Nev. Rev. Stat. § 608.140, the implied private right of action to recover wages recognized in *Neville*, and other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HEIDI LOTHRINGER, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendant INTOUCHCX US INC., and grant the following relief:

a. Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I), authorizing notice to be issued to all similarly situated persons, and permitting those persons to opt into this action;

b. Certifying the Nevada Wage Class and Nevada Waiting Time Subclass pursuant to Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

c. Declaring that Defendant's policies and practices described herein violate the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and Nevada wage-and-hour laws, including Nev. Rev. Stat. §§ 608.016, 608.018, 608.020, 608.030, 608.040, 608.050, and Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16;

d. Awarding Plaintiff and the FLSA Collective all unpaid overtime wages owed under the FLSA, plus an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

e. Awarding Plaintiff and the Nevada Wage Class all unpaid minimum wages, straight-time wages, and overtime wages owed under Nevada law, including all available damages and remedies pursuant to Nev. Rev. Stat. §§ 608.016, 608.018, and 608.140, and Nevada's Minimum Wage Amendment;

f. Awarding Plaintiff and the Nevada Waiting Time Subclass statutory waiting time penalties pursuant to Nev. Rev. Stat. §§ 608.040 and 608.050, together with all other available relief under Nev. Rev. Stat. § 608.140 and applicable law;

g. Awarding prejudgment and post-judgment interest as allowed by law;

h. Awarding Plaintiff and all Collective and Class members reasonable attorneys' fees and litigation costs pursuant to 29 U.S.C. § 216(b), Nev. Rev. Stat. § 608.140, and any other applicable authority;

i. Awarding such other and further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff HEIDI LOTHRINGER, individually and on behalf of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

Dated: February 27, 2026

BROWN, LLC

By: s/ Nicholas Conlon

Nicholas Conlon (PHV forthcoming)
Michael Rinderman (PHV forthcoming)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (877) 561-0000
nicholasconlon@jtblawgroup.com
michael.rinderman@jtblawgroup.com